# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GREGORY VAN SCIVER,** | **Case No. 22–cv–03669–ESK–SAK** |
| **Plaintiff,** | |
| v. | **OPINION** |
| **LINDE, INC.,** *et al.*, | |
| **Defendants.** | |

**KIEL, U.S.D.J.**

**THIS MATTER** is before the Court on the Court's *sua sponte* inquiry of whether it has subject matter jurisdiction over this action.   I entered an order on April 25, 2024 directing the parties to show cause why this action should not be remanded (Order to Show Cause) (ECF No. 82) because of the addition of nondiverse defendant Cavagna North America, Inc. (Cavagna) in the third amended complaint (ECF No. 62 (Third Am. Compl.)).   Defendants Cavagna, Linde Inc. (Linde), and Norris Cylinder Co. (Norris) filed briefs in response to the Order to Show Cause.   (ECF Nos. 86, 88, 89.)   At the Court's direction (ECF No. 90), plaintiff filed a response to defendants' briefs (ECF No. 91).   I held a hearing on the jurisdictional issue on July 9, 2024 (ECF No. 96) and allowed the parties to submit supplemental briefing (ECF No. 94).   Only Linde filed a supplemental brief.   (ECF No. 97.)   I find jurisdiction lacking and decline to drop Cavagna as a defendant.   This action will, therefore, be remanded to the Superior Court of New Jersey (Superior Court).

## I.   FACTS AND PROCEDURAL HISTORY

The relevant facts and procedural history are not disputed.   Plaintiff originally brought this action in the Superior Court against defendants Grainger, Inc., W.W. Grainger, Inc., Praxair, Inc., and Linde. (ECF No. 1–1

¶¶ 2, 5, 9, 12.)   Plaintiff also named fictitious defendants ABC Corporations 1–10 and John Does 1–10.   (*Id.* ¶ 17.)   The original complaint asserted claims for strict liability and negligence[1] against defendants for allegedly "creating, designing, manufacturing, distributing, selling, supplying, maintaining, inspecting and/or modifying the acetylene tank [(Tank)] and its component parts."   (*Id.* ¶¶ 17, 23, 31, 32.)   Plaintiff set forth the following factual allegations: (1) on September 30, 2020, plaintiff suffered personal injuries after loading the Tank into the trunk of a rental car, which then exploded in plaintiff's face when he opened the trunk (Incident) (*id.* ¶¶ 25–30)[2]; (2) the Tank was "designed, created, manufactured, sold and/or supplied by" Grainger and/or ABC Corporations (*id.* ¶ 31)[3]; (3) the Tank was "sold, filled, and/or supplied by" Praxair, Linde, and/or John Does (*id.* ¶ 32)[4]; (4) Grainger, ABC Corporations, Praxair, Linde, and/or John Does knew or should have known the design of the Tank was "completely dangerous, inadequate, defectively designed and incapable of surviving normal use without failing" (*id.* ¶ 37)[5]; and (5) Grainger, ABC Corporations, Praxair, and Linde knew or should have known that the

---

[1] Although plaintiff subsequently withdrew the count for negligence in the amended complaints, the factual allegations remain largely the same throughout each amendment to the complaint.   The key difference between the complaints for the purposes of this Court's jurisdictional analysis is the identification and addition of Cavagna and Norris as named defendants in the operative, third amended complaint. (Third Am. Compl.)

[2] *See also id.* ¶¶ 33–37 (alleging the same).

[3] *See also id.* ¶ 38 (alleging the same, but also against Norris and Cavagna).

[4] *See also id.* ¶ 39 (alleging the same).

[5] *See also id.* ¶ 45 (alleging the same, but also against Norris and Cavagna).

"inadequate, defectively designed … [T]ank … would cause severe injury and/or death to end users or consumers, such as [p]laintiff" (*id*. ¶38).[6]

Following the Incident, the New Jersey State Police took possession of the Tank and did not permit the parties to inspect it before plaintiff filed this action. (ECF No. 91 p.2.)   As a result, plaintiff included ABC Corporations and John Does as defendants because plaintiff was unable to identify the potentially liable manufacturers of certain parts of the Tank.   (*Id*.)

## A.   Removal

Linde removed this case from the Superior Court based on diversity jurisdiction on June 9, 2022.   (ECF No. 1 ¶30.)[7]   The notice of removal states that diversity jurisdiction exists because: (1) plaintiff is a citizen of New Jersey; (2) Linde is a Delaware corporation with its principle place of business in Connecticut and is thus a citizen of Connecticut and Delaware; (3) W.W. Grainger is an Illinois corporation with its principal place of business in Illinois and is thus a citizen of Illinois; (4) Grainger is a Delaware corporation that has held the corporate status of "Void—AR's or Tax Delinquent" since 2006 and appears to have its principal place of business in Delaware, although the latter is not certain.[8]   (*Id*. ¶¶17–21.)   Further, the notice of removal asserts that it is facially apparent that the amount in controversy exceeds $75,000.   (*Id*. ¶29.)

---

[6] *See also id*. ¶46 (alleging the same, but also against Norris and Cavagna).

[7] Linde clarified that Linde was formerly known as Praxair and are not separate entities.   (*Id*. ¶¶1 n.2, 10.)

[8] Linde contended that Grainger could not have had its principal place of business in New Jersey at the time the complaint was filed.   (*Id*. ¶¶20, 21.)   However, Linde argued that even if Grainger could be considered a citizen of New Jersey, "such citizenship would be disregarded under the Third Circuit's fraudulent joinder jurisprudence."   (*Id*. ¶22 (citing *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006).)   Therefore, Linde alleged that based on the citizenships of plaintiff and the named defendants, complete diversity existed at the time of removal.   (*Id*. ¶28.)

### B.   Post-Removal Procedural History

#### 1.   Amended Complaint

Pursuant to District Judge Zahid N. Quraishi's judicial preferences,[9] Linde filed a letter on June 30, 2022 requesting a pre-motion conference to seek leave to file a motion to dismiss and for a more definite statement pursuant to Federal Rules of Civil Procedure (Rules) 12(b)(6) and 12(e).   (ECF No. 12.) Plaintiff filed a response on July 7, 2022 indicating that he would withdraw his negligence claim.   (ECF No. 15.)

As directed by Judge Quraishi (ECF No. 16), plaintiff filed the amended complaint on July 27, 2022 (ECF No. 18).   The amended complaint withdrew the negligence claim and only contained a count for strict liability against the same named and fictitious defendants as the original complaint.   (*Id*.)   W.W. Grainger filed an answer to the amended complaint (ECF No. 20) and Linde filed a motion to dismiss under Rule 12(b)(6) for failure to state a claim (Linde Motion to Dismiss) (ECF No. 21).

#### 2.   Attempt to Obtain Information from State Police

On August 4, 2022, plaintiff issued a subpoena to non-party New Jersey State Police (Subpoena), which was to be served on the New Jersey Office of the Attorney General (NJAG).   (ECF No. 23–1 p.10.)   The Subpoena sought documents and media relating to the State Police's investigation into the Incident and the vehicle in which the Tank was stored at the time of the Incident.   (*See id*. p.5.)   On September 14, 2022, plaintiff filed a motion to enforce the Subpoena (First Motion to Enforce).   (ECF No. 23.)   On January

---

[9] The case was initially assigned to Judge Quraishi and Magistrate Judge Lois H. Goodman in the Trenton Vicinage.   (*See* docket entry following ECF No. 5.)

9, 2023, Judge Goodman directed plaintiff to "submit a certification showing that the … [First] Motion to Enforce the Subpoena was served upon the New Jersey State Police."   (ECF No. 25.)

On January 17, 2023 plaintiff filed a second motion to enforce the Subpoena (Second Motion to Enforce) (ECF No. 26) with a certificate of service showing that the NJAG was served on January 24, 2023 (ECF No. 27).   The NJAG, thereafter, filed a letter informing the Court that it had provided plaintiff's counsel with a link to materials responsive to the Subpoena.[10]   (ECF No. 28.)

### 3.    Second Amended Complaint

Because no opposition was filed in response to the Linde Motion to Dismiss, Judge Quraishi dismissed the amended complaint without prejudice and granted plaintiff leave to file a second amended complaint.[11]   (ECF No. 31.)   The following day, plaintiff filed a second amended complaint against the same named and fictitious defendants as named in the original and amended complaints.   (ECF No. 32.)   Despite issuing the Subpoena to, *inter alia*, find out who was responsible for the defects in the Tank and what defects existed, plaintiff did not replace and affirmatively name the fictitious defendants in the second amended complaint.   (*Id*.)

On May 15, 2023, Linde and W.W. Grainger each filed a request to Judge Quraishi for a pre-motion conference to seek leave to file motions to dismiss the second amended complaint.   (ECF Nos. 34, 35.)   On June 13, 2023, Judge Quraishi waived the pre-motion conference and granted defendants leave to file

---

[10] Judge Goodman granted the Second Motion to Compel (ECF No. 29) but following receipt of the letter from the NJAG, withdrew the order (ECF No. 30).

[11] Although W.W. Grainger had filed an answer to the amended complaint (ECF No. 20), the order dismissed the case "in its entirety."  (ECF No. 31.)

motions to dismiss by July 14, 2023.  (ECF No. 37.)  On July 13, 2023, defendants requested an extension of time to file their motions to dismiss because the parties were coordinating a joint inspection of the Tank for July 26, 2023, which the parties "anticipate[d] may resolve the … pleading issues" surrounding the "lack of specificity of the alleged defects" in the Tank.  (ECF No. 38; *see also* ECF No. 39.)

Following the parties' inspection of the Tank, plaintiff wrote to Judge Quraishi on August 7, 2023, to advise that several component part manufacturers had been identified, and plaintiff was in the process of putting them on notice of this lawsuit.  (ECF No. 41.)  Plaintiff also noted that he anticipated submitting a proposed third amended complaint joining the "recently-discovered component part manufacturers, who were previously completely unknown and unidentifiable to all parties, with the consent of all parties to the present litigation."  (*Id*. p.1.)  To allow the submission of a "proposed [t]hird [a]mended [c]omplaint" joining the newly identified defendants, plaintiff, on behalf of all parties, requested that either defendants be granted another extension to file their motions to dismiss or a conference be scheduled.  (*Id*.)  Judge Quraishi "So Ordered" the letter (Letter Order) (ECF No. 42) without specifying which of the requests were granted.  Plaintiff interpreted the Letter Order as granting leave to file a third amended complaint. (*See* ECF Nos. 43, 52.)

### 4.   Third Amended Complaint

Plaintiff filed a third amended complaint on September 8, 2023 naming Norris and Cavagna as additional defendants.  (ECF No. 43.)  Linde submitted a pre-motion letter objecting to the third amended complaint for having been filed without leave in violation of Rule 15(a)(2) and requesting leave to file a motion to dismiss for failure to state a claim.  (ECF No. 47.)  W.W. Grainger and recently-joined Cavagna also filed pre-motion letters

seeking leave to file motions to dismiss but did not raise Rule 15(a)(2) issues. (ECF Nos. 48, 49.)   Plaintiff responded saying that he understood the Letter Order as granting leave to file the third amended complaint.   (ECF No. 52.) Judge Quraishi ordered the parties to meet and confer to submit a proposed order, either stipulating to the filing of the third amended complaint or setting a briefing schedule for a motion for leave to file the third amended complaint. (ECF No. 53.)

The parties could not agree on whether plaintiff properly filed the third amended complaint.   (ECF Nos. 54.)   Accordingly, the parties proposed, and Judge Quraishi ordered, a briefing schedule for plaintiff's motion for leave to file a third amended complaint.   (ECF No. 55.)

While briefing plaintiff's motion for leave to file a third amended complaint, the parties were apparently unaware that Cavagna's New Jersey citizenship would destroy this Court's diversity jurisdiction.   Magistrate Judge J. Brendan Day, who was assigned to the case following Judge Goodman's retirement (*see* docket entry after ECF No. 32), granted the motion to amend pursuant to Rule 15(a).   (ECF No. 59.)   Since the parties had not raised any issue with the joinder of Cavagna pertaining to this Court's jurisdiction, Judge Day was neither asked to consider a joinder analysis pursuant to 28 U.S.C. 1447(e) nor the impact of Cavagna's joinder on this Court's jurisdiction.

Plaintiff refiled the third amended complaint on January 12, 2024.[12] (Third Am. Compl.)   In response, defendants Cavagna and Linde filed motions

---

[12] Although the refiled version of the third amended complaint is identical to the version filed on September 8, 2023, the refiled version supersedes the prior filing and is the operative complaint.   Both versions of the third amended complaint mistakenly included W.W. Grainger as a defendant.   (ECF No. 42; Third Am. Compl.) Hence, before and after the refiling of the third amended complaint, W.W. Grainger filed stipulations signed by all parties dismissing W.W. Grainger pursuant to Rule 41(a)(1)(A)(ii).   (ECF Nos. 60, 65.)   Judge Quraishi signed off on both stipulations, thereby dismissing W.W. Grainger as a defendant.   (ECF Nos. 61, 66.)   Of note, Grainger has not been dismissed from this case despite the parties having mislabeled

to dismiss the third amended complaint on February 23, 2024.   (ECF Nos. 68, 69.)   Shortly after the briefing on those motions was completed, the case was reallocated from Trenton to Camden and reassigned to Magistrate Judge Sharon A. King and me.   (ECF No. 75.)   On April 15, 2024, Norris filed a letter requesting a pre-motion conference seeking leave to file a motion to dismiss.[13] (ECF No. 76.)

### C.   Jurisdictional Inquiry

During my review of Norris's pre-motion letter, I noted that the addition of Cavagna may have destroyed complete diversity in this action.   On April 25, 2024, I entered the Order to Show Cause directing the parties to demonstrate why this action should not be remanded for lack of complete diversity, stating as follows:

> TEXT ORDER: This matter was removed on the basis of diversity jurisdiction.   (ECF No. 1).   On January 12, 2024, plaintiff filed a third amended complaint ([Third Am. Compl.) pursuant to leave granted by Magistrate Judge J. Brenden Day (ECF No. 59).   According to the third amended complaint, plaintiff is a citizen of New Jersey and defendant Cavagna North America, Inc. "is a corporation or other business entity organized and existing under the laws and regulations of the State of New Jersey." The Court's independent search of the New Jersey Department of Treasury website indicates that Cavagna is a New Jersey corporation.   Accordingly, the parties are directed to show cause by May 10, 2024 why this matter should not be remanded for lack of complete diversity.   (*See Frederico v. Home*

---

the docket entry at ECF No. 60 as a stipulation dismissing Grainger.   (ECF No. 94 pp. 4, 5.)

[13] Norris did not file a motion to dismiss because following the waiver of service, Norris's response to the third amended complaint was not due until April 15, 2024. (ECF No. 70.)

*Depot*, 507 F.3d 188, 193 (3d Cir. 2007) ("[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court."); (*Batoff v. State Farm Insurance Co.*, 977 F.2d 848, 851 (3d Cir. 1992) ("When a non-diverse party has been joined as a defendant, then in the absence of a substantial federal question[,] the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined.")) Pending resolution of the jurisdictional issue, the motions to dismiss at ECF Nos. 68 and 69 are administratively terminated and the Court's decision regarding whether to hold the pre-motion conference requested by defendant Norris Cylinder Co. (ECF No. 76) will be held in abeyance.

(ECF No. 82.)   Cavagna confirmed in its May 3, 2024 certification that it is a New Jersey corporation with its principal place of business in New Jersey. (ECF No. 85.)

## II.   THE PARTIES' ARGUMENTS

Despite Cavagna having conceded that this action lacks complete diversity (*see id.*), Cavagna argues in response to the Order to Show Cause that this Court need not initially consider subject matter jurisdiction but can first consider whether the claims against it should be dismissed pursuant to Rule 12(b)(6) as time-barred.   (ECF No. 86 p.3.)   Cavagna states that while plaintiff had "ample time and resources to investigate the identity of the parties that could be liable for [p]laintiff's injuries," it was not notified of the instant claims until September 2023, more than one year past the two-year statute of limitations.   (*Id.* pp.3, 4.)   Cavagna argues that given plaintiff's "irrefutable lack of diligence in ascertaining Cavagna's identity," the relation back doctrine does not apply.   (*Id.* p.3.)   Cavagna asserts that ruling on its motion to dismiss would result in its dismissal with prejudice on statute of limitation grounds, thereby mooting the jurisdictional issue by restoring complete

diversity.   (*Id.*)   Cavagna urges the Court to conduct a fraudulent joinder analysis to disregard its citizenship in our jurisdictional analysis and cites *In re Briscoe*, 448 F.3d 201, 219 (3d Cir. 2006) for the proposition that courts can consider a statute of limitations defense in connection with such an analysis. (*Id.*)

Linde and Norris also assert that the claims against Cavagna are time-barred, Cavagna should be dropped, and therefore this Court has jurisdiction to decide their Rule 12(b)(6) motions to dismiss for failure to state a claim. (ECF Nos. 88, 89.)   They argue that under the Third Circuit's recent decision in *Avenatti v. Fox News Network LLC*, 41 F.4th 125 (3d Cir. 2022), this Court may "unwind the clock" and apply fraudulent joinder principles to drop Cavagna under Rule 21.   (*Id.* p. 2.)   Norris, like Cavagna, points to *Briscoe* for the proposition that, in a fraudulent joinder context, "[i]f a district court can discern, as a matter of law, that a cause of action is time-barred under state law, it follows that the cause fails to present even a colorable claim against the non-diverse defendant."   (ECF No. 89 p. 2 (quoting *Briscoe*, 448 F.3d at 219).)

In contrast, plaintiff argues that *Batoff*, 977 F.3d at 848—which provides that the only way to avoid remand would be to show that plaintiff fraudulently joined Cavagna—is dispositive and, because Cavagna was not fraudulently joined, this case should be remanded.   (ECF No. 91 p. 2.)   Defendants' arguments in favor of fraudulent joinder are rooted in plaintiff's alleged dilatoriness in identifying Cavagna.   Plaintiff counters defendants' claim of his lack of diligence by asserting that for almost three years he was "prohibited" from inspecting the Tank and valve assembly involved in the Incident.   (*Id.*) According to plaintiff, he was able to join Cavagna as a defendant only after the inspection.   (*Id.*)

### III. LEGAL STANDARD

This Court has an ongoing, independent obligation to determine whether subject matter jurisdiction exists, even when no party challenges it. *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). This is because "[f]ederal courts are courts of limited jurisdiction [and] may not exercise jurisdiction absent a statutory basis." *Home Depot U. S. A., Inc. v. Jackson*, 587 U.S. 435, 437 (2019) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

In removed cases, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004) (quoting 28 U.S.C. §1447(c)); *see also AHS Hosp. Corp. v. Ippolito*, No. 19–12052, 2019 WL 3985647, at *1 (D.N.J. Aug. 20, 2019) (determining, *sua sponte*, that the court lacked subject matter jurisdiction). "[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico,*, 507 F.3d at 193. Removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Batoff*, 977 F.2d at 851 (quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987)).

If an action is removed with a nondiverse defendant, the removing defendant may argue that the nondiverse defendant was fraudulently joined by plaintiff so the Court can disregard the nondiverse defendant's citizenship for the purposes of determining whether diversity jurisdiction exists. However, the "[f]raudulent joinder doctrine does *not* apply to party additions that occur *after* a valid removal." *Avenatti*, 41 F.4th at 133 (emphasis in original).

In contrast, when a nondiverse party is sought to be joined after removal, §1447(e) directs the Court to consider whether to: (a) deny joinder and retain jurisdiction; or (b) permit joinder of the nondiverse defendant and remand the

11

case.  "When assessing motions to amend under § 1447(e), courts in this district along with numerous other districts have adopted a flexible and equitable approach developed by the Fifth Circuit Court of Appeals in *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987)."  *City of Perth Amboy v. Safeco Ins. Co. of Am.*, 539 F. Supp. 2d 742, 746 (D.N.J. 2008).

Here the parties did not raise the specter of destroying diversity jurisdiction when plaintiff moved for leave to file a third amended complaint. Thus, the Court was not provided an opportunity to conduct an analysis under § 1447(e) before Cavagna was joined as a defendant.   The plaintiff in *Avenatti* added a nondiverse defendant after removal through an amendment to the complaint as of right pursuant to Rule 15(a)(1)(A).   Thus, like here, the district court in *Avenatti* did not have an opportunity to consider an analysis under § 1447(e) before complete diversity was apparently destroyed.   The district court determined that it had the "discretionary authority under Rule 21 to drop [the nondiverse defendant] and restore complete diversity." [14]   *Id.* at 130.   The Third Circuit agreed and provided:

> A court's Rule 21 discretion is bounded by: (1) Rule 19, such that indispensable parties may not be dropped; and (2) Rule 21's own requirement that no party be prejudiced.  If these prerequisites are satisfied, then district courts may guide their "on just terms" discretion by looking to the factors delineated in *Hensgens* just as they would in cases where § 1447(e) applied on its face.

*Id.* at 135.   As to an analysis of whether the nondiverse party was fraudulently joined, the fraudulent joinder doctrine may be too rigid to be the "sole lens" through which a court conducts its analysis but a court can consider fraudulent joinder principles in determining whether to maintain jurisdiction.   *Id.* at 133.

---

[14] Rule 21 provides that the Court "may at any time, on just terms, add or drop a party."

### IV. ANALYSIS

#### A.    <u>Indispensable Party Analysis</u>

The Third Circuit has "characterized indispensable parties as 'persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its [final termination] may be wholly inconsistent with equity and good conscience.'"   *DeVito v. Panevino Ristorante*, No. 23–00743, 2023 WL 7895958, at *4 (D.N.J. Nov. 16, 2023) (quoting *Doolin v. Kasin*, 424 F. App'x 106, 110 n. 4 (3d Cir. 2011)).   Rule 19(b) lists four factors that are "the most important considerations" in determining whether a party is indispensable.   *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 319 (3d Cir. 2007) (quoting *Gardiner v. V.I. Water & Power Auth.*, 145 F.3d 635, 640 (3d Cir. 1998)).   These factors are:

> (1) the extent to which a judgment rendered in the [party's] absence might prejudice that [party] or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, by shaping of relief, or by other measures; (3) whether a judgment entered in the [party's] absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

Weighing the Rule 19(b) factors here leads to the conclusion that Cavagna is not an indispensable party because Cavagna is "no more than an alleged joint tortfeasor."   *Pol v. Smith Provision Co.*, No. 19–00102, 2020 WL 924206, at *3 (W.D. Pa., Feb. 26, 2020) (finding a nondiverse manufacturer defendant in a products liability case was not an indispensable party after weighing the Rule 19(b) factors because the co-defendant, if found liable, would have the right to recover from the manufacturer defendant).   "'It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single

lawsuit' in order to accord adequate relief to the remaining parties." *Id.* (quoting *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990)); *see also K.J. ex rel. Lowry v. Div. of Youth & Fam. Servs.*, 363 F. Supp. 2d 728, 750 (D.N.J. 2005) ("As a matter of law, joint tortfeasors are not indispensable parties.").

In *Avenatti*, the court determined that the nondiverse defendant was not indispensable because other individuals were named in the action and the nondiverse defendant's employer was already in the action and could provide complete recovery under joint-and-several liability. 41 F.4th at 135. Cavagna's absence will neither prejudice Cavagna nor the remaining co-defendants because they could pursue recovery against Cavagna in a separate action. *See Pol v. Smith Provision Co.*, 2020 WL 924206, at *3 (finding the parties' retention of their rights—by virtue of their status as joint tortfeasors—weighed in favor of concluding the non-diverse defendant was not indispensable); *see also Alulis v. Container Store, Inc.*, No. 19–02564, 2020 WL 2556946, at *3 (E.D. Pa. May 20, 2020) (same).

Because plaintiff pleads liability on a joint-and-several basis, Cavagna as an alleged joint tortfeasor and is not an indispensable party. *Id.* at 135–36; *see also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 838 (1989) (holding that, where multiple defendants "are jointly and severally liable, it cannot be argued that [one is] indispensable"). As a result, I will move on to apply the *Hensgens* factors.

## B.   ***Hensgens* Factors**

When analyzing questions of joinder, the *Hensgens* factors to consider are: "(1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether plaintiff has been dilatory in asking for amendment; (3) whether plaintiff will be significantly injured if amendment is not allowed; and (4) any other factors bearing on the equities." *City of Perth Amboy*, 539 F. Supp. 2d at 752–53.

1.   **Purpose of Amendment**

"Generally, if a proposed claim is viable, and there is a genuine intent to prosecute the claim in good faith, the primary purpose of joinder is not to defeat federal jurisdiction." *Winograd v. Mercedes-Benz USA, LLC*, No. 16–04914, 2017 WL 2926040, at *4 (D.N.J. June 14, 2017). Plaintiff's proposed claim against Cavagna is viable and there is no evidence that plaintiff's purpose in joining Cavagna was intended to defeat diversity jurisdiction. Instead, plaintiff has shown a clear intent to prosecute this claim, evidenced by plaintiff's efforts in identifying Cavagna as the manufacturer of the valve assembly on the Tank. Plaintiff was not aware of Cavagna's identity, or its New Jersey citizenship, until long after this case was removed to federal court. Moreover, no defendant argued in its briefing or at oral argument that plaintiff had any improper intention in joining Cavagna. (*See* ECF Nos. 86, 88, 89; *see also* ECF No. 96.) Rather, defendants concede that there is no indication that plaintiff joined Cavagna to defeat federal jurisdiction. (ECF No. 96 p.10, 14.) This factor weighs in favor of Cavagna remaining in the case.

2.   **Dilatoriness**

The record reflects that plaintiff was not dilatory. Discovery had not commenced before the removal of this action in June 2022. (ECF No. 96 pp.25, 26.) Although, two months after the removal, plaintiff served the Subpoena to inquire into the Incident and to request inspection of the Tank (ECF No. 23–1), Judge Goodman entered an order on September 9, 2022 directing the parties "to not engage in formal discovery pending further order" (ECF No. 22). After having filed the First Motion to Enforce the Subpoena and the Second Motion to Enforce the Subpoena, the NJAG did not confirm until February 2023 that it had "provided [p]laintiff's counsel with a link containing the responsive materials." (ECF No. 28.) Despite the production of "responsive materials," plaintiff had difficulty scheduling the physical inspection of the Tank. (ECF

No. 96 p.26 ("The six-month delay was [plaintiff] waiting for the [NJAG] to let us know when we could come [for the inspection].   We had to give names to do background checks on everyone to come to a federal building to literally just look at a tank.").)

Cavagna complains that because plaintiff "took six months" to inspect the Tank, it has been prejudiced by the delay in being named in this action. Indeed, courts within this district have stated that a "six-month delay in filing a motion to amend could be considered dilatory."   *Bhushan on behalf of Z.T.-B. v. Bright Horizons*, No. 21–07072, 2022 WL 17177853, at *3 (D.N.J. Nov. 23, 2022); *see also Arevalo v. Brighton Gardens*, No. 15–02563, 2016 WL 4975199, at *4 (D.N.J. Sept. 16, 2016) (finding the plaintiff dilatory in requesting an amendment because six months had passed since removal and the plaintiff had known the identity of the defendant it sought to join since the beginning of the action).   However, length of time is not the only consideration in determining whether a plaintiff was dilatory.   *City of Perth Amboy*, 539 F. Supp. 2d at 748. Courts also consider "the nature of the delay," as well as whether "the purpose of the delay was to unnecessarily prolong litigation."   *Id.*

I find that, although plaintiff could have been more diligent, he was not dilatory in his efforts to obtain the identity of additional defendants, including Cavagna.   Therefore, this factor weighs in favor of Cavagna remaining in this case.

### 3.   Injury to Plaintiff Without Amendment

Without Cavagna's joinder, plaintiff would be significantly prejudiced. Plaintiff would not be able to proceed with his claims against a potentially responsible party.   *Hobson v. Wal-Mart Stores E., L.P.*, No. 22–01524, 2023 WL 5280319, at *4 (D.N.J. Jan. 9, 2023), *report and recommendation adopted*, No. 22–01524, 2023 WL 5274612 (D.N.J. Aug. 16, 2023)*; see also Winograd v.*

*Mercedes-Benz USA, LLC*, 2017 WL 2926040, at *5, (finding the plaintiff would be prejudiced if the nondiverse proposed defendant were not joined). Courts consider "both economic and legal prejudice" to plaintiff if the nondiverse party is not allowed to be joined in the action. *City of Perth Amboy*, 539 F. Supp. 2d at 748.

Plaintiff would be at a critical disadvantage if he were forced to litigate his claims against all defendants, except Cavagna, in federal court. If Cavagna were dropped from this lawsuit for the purpose of retaining diversity jurisdiction, plaintiff's only alternative would be to file a second lawsuit in state court against Cavagna stemming from the same Incident. *See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 768 (7th Cir. 2009) (finding that if the nondiverse party was dropped, the plaintiff would be required to litigate the matter without also litigating against two potentially liable parties and, thereby, be prejudiced). Such piecemeal litigation is not desirable and is prejudicial to plaintiff. For example, if Cavagna is dropped, the remaining defendants could point the blame at Cavagna's component part in the federal litigation, while Cavagna could argue in the state litigation that the blame rests with the remaining defendants in the federal litigation. Plaintiff's inability to litigate against all potentially liable parties in one litigation, would create the very real potential for inconsistent and unjust results. *Id.* Thus, this factor weighs in favor of Cavagna remaining in the case.

### 4.    <u>Other Factors Bearing on Equities</u>

When considering the fourth factor, courts generally "look[] to judicial efficiency and economy." *Hobson v. Wal-Mart Stores E., L.P.*, 2023 WL 5280319, at *4. The "relevant issue" when applying the factor is "whether there are any other factors that bear upon the equities as they apply to [p]laintiff and to the currently named and removing defendant[s]." *Jordan v. Alliedbarton Sec. Servs.*, No. 10–03011, 2010 WL 4687934, at *5 (D.N.J. Nov.

10, 2010) (finding plaintiff's arguments unavailing regarding the equities as they applied to the nondiverse defendant plaintiff was seeking to join in an amended complaint).

Here, if Cavagna remains in this case and the case is remanded, Cavagna will not be prejudiced.   Cavagna will not lose its opportunity to seek dismissal and raise statute of limitations issues.   If Cavagna is successful in its motion to dismiss, the remaining defendants can then remove to federal court based on diversity jurisdiction.   The Superior Court is well-equipped to apply New Jersey's relation back doctrine and its fictitious party practice, two issues that will likely be central to resolution of Cavagna's anticipated motion to dismiss the third amended complaint.   Even if there is some question as to whether plaintiff is entitled to the benefit of the relation back doctrine under New Jersey's fictitious party practice, for the purposes of the present analysis, any uncertainty must be resolved in plaintiff's favor and in favor of remand.   *Steel Valley Auth.,* 809 F.2d at 1010 (explaining that removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand.").

Further, judicial economy is better served by joinder.   "Compelling a plaintiff to pursue parallel actions in state and federal court is a waste of judicial resources." *Confessore v. AGCO Corp.*, No. 04–07262, 2015 WL 4430472, at *7 (D.N.J. July 20, 2015).   Courts in this district have found that the "most rational approach is, 'to determine the respective rights and liabilities of all relevant parties … in one proceeding." *Id.* (quoting *Fields v. Zubkov,* 2008 WL 4447098, at *6 (D.N.J. Sep. 26, 2008)).   Judicial economy is furthered by allowing plaintiff to litigate against all defendants, including Cavagna, in a single forum.   This factor weighs in favor of Cavagna remaining in the case.

### C.   <u>Fraudulent Joinder</u>

The Third Circuit in *Avenatti* counseled district courts to consider fraudulent joinder principles, even in situations where a spoiler-party is joined after removal, because those principles "might help inform the court's remand decision" and "it is difficult to imagine why a jurisdiction-defeating defendant should be retained if there is not even a colorable claim against him."   *Avenatti*, 41 F.4th at 133–34.

Here, Cavagna argues both in its jurisdictional briefing (ECF No. 86) and in its motion to dismiss (ECF No. 68) that the claims against Cavagna are barred by the statute of limitations.   If the claims against Cavagna are time-barred, as a matter of law, then it follows that those claims do not present a colorable claim.   However, I must "accept any well-pleaded allegations as true, and resolve uncertainty in the law governing the limitations bar in plaintiff's favor."   *In re Briscoe*, 448 F.3d at 219.

Rule 15(c)(1) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when: (A) the law that provides the applicable statute of limitations allows the relation back."   This provision of Rule 15 was added through an amendment in 1991 to "make it clear that the rule does not apply to preclude any relation back that may be permitted under the applicable limitations law. … If federal jurisdiction is based on the citizenship of the parties, the primary reference is to the law of the state in which the district court sits." Fed. R. Civ. P. 15(c)(1) advisory committee's note to 1991 amendment.   Accordingly, I apply New Jersey's substantive law on the application of both the relation back doctrine and fictitious party practice to determine whether plaintiff has a colorable claim against Cavagna.

New Jersey Rule of Court 4:26-4 permits a complaint to name a fictitious party "if the defendant's true name is unknown."   The New Jersey Appellate Division has described how the assertion of claims against a defendant relates

back to the filing of the original complaint where a party is substituted for a fictitiously named defendant:

> The fictitious defendant rule was promulgated to address the situation in which a plaintiff is aware of a cause of action against a defendant but does not know that defendant's identity."   The rule's effect is to "render timely the complaint filed by a diligent plaintiff, who is aware of a cause of action against an identified defendant but does not know the defendant's name."   When the plaintiff discovers the party's name, "amendment of the complaint may relate back [to] allow an action otherwise time-barred."   Accordingly, if a defendant is properly identified by a fictitious name before expiration of the applicable limitations period, an amended complaint substituting a fictitiously named defendant's true name will relate back to the date of filing of the original complaint.

*Worthy v. Kennedy Health Sys.*, 140 A.3d 584, 593 (N.J. Super. Ct. App. Div. 2016) (internal citations omitted).

Here, I have already determined when applying the *Hensgens* factors, plaintiff was not dilatory in his attempt to obtain the identities of the parties responsible for the manufacture of the Tank.   As a result, it is possible that a court conducting a fulsome analysis on a motion to dismiss—rather than through a consideration of fraudulent joinder principles—could find that plaintiff is entitled to the benefit of the New Jersey relation back doctrine and fictitious party practice.   Under a fraudulent joinder analysis, "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court."   *Batoff*, 977 F.2d at 851–52.

Because I am unable to "discern, as a matter of law, that a cause of action is time-barred under state law," I cannot conclude that this case "fails to present

even a colorable claim against [Cavagna]." *In re Briscoe*, 448 F.3d at 219. Although the Court avoids applying the rigid fraudulent joinder analysis to the present post-removal case, I find that the fraudulent joinder principles weigh in favor of keeping Cavagna in the case.

## V.  CONCLUSION

Cavagna will not be dropped and, accordingly, its citizenship will be considered.  I find that this Court lacks subject matter jurisdiction and this action will be remanded to the Superior Court.  An appropriate order accompanies this opinion.


        */s/ Edward S. Kiel*
**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Date: August 19, 2024